[No. 9934–5–I.  Division One.  May 3, 1982.]

THE STATE OF WASHINGTON, *Respondent*, v. DORA
ELAINE NORLUND, *Appellant*.

*Hunter John* of *Seattle–King County Public Defender
Association*, for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Lee Ann Miller, Assistant,* for respondent.

CORBETT, J.—The child appeals from an order finding her in contempt and directing that she spend 30 days in detention.

The child, a runaway, was brought before the court by a dependency petition filed June 12, 1980. Her whereabouts were then unknown. A dependency review hearing was held on July 7, 1980, at which time she attended and was ordered to reside at a receiving home pending permanent placement. She promised that she would not run from placement. On July 17, 1980, she appeared with her attorney for a second dependency review hearing. The court placed her at Antonian School. She remained there until mid–January 1981. She ran 25 to 30 times from the school. On February 18, 1981, at another dependency review hearing, the child was found to be in contempt of court for repeatedly violating the court's order. At a hearing held on February 20, 1981, the child's attorney raised for the first time the claim that the court lacked personal jurisdiction over the child, asserting that the State had failed to comply with RCW 13.34.070, by failing to give the child notice of the dependency petition and an opportunity to be heard.

Between the time of the child's first appearance and the contempt hearing, approximately 8 months elapsed. The child appeared before the court a number of times during that interval. The juvenile court made repeated findings of dependency as a result of these hearings. In most instances she was represented by counsel. Where not inconsistent, the civil rules apply to juvenile court proceedings, JuCR 1.4(a). Under CR 12(h), a defense of lack of personal jurisdiction is waived unless timely raised. The child's failure to challenge the court's jurisdiction until the February 20, 1981, hearing on contempt resulted in a waiver of objection to the court's jurisdiction over her person. The juvenile court did not err by denying the motion to dismiss.

The child next contends that the juvenile court does not

have the power to find a child in contempt of court for disregarding a court order. She contends that this exercise of the court's contempt power is contrary to: (1) Prevailing state and federal policies to treat dependent children as status offenders rather than as delinquents; (2) the clear and unambiguous provisions of the Washington juvenile justice act and dependency act; (3) the Eighth and Fourteenth Amendments of the United States Constitution and the Washington State Constitution limiting the powers of the court; (4) RCW 7.20 in which the civil contempt powers are specified; and (5) the inherent power of the court.

In *Yamaha Motor Corp. v. Harris*, 29 Wn. App. 859, 866, 631 P.2d 423 (1981), the court stated:

> Contempt of court is punishable either by statute, RCW 9.23.010 and 7.20.020, or pursuant to the court's inherent contempt power. Fine or imprisonment, or both, are prescribed by RCW 7.20.020 for civil contempt. The court may use its inherent contempt power to coerce compliance with its lawful order and is not limited in its exercise of this power by the punishments prescribed by the civil contempt statute. The coercive sanctions imposed for contempt lay within the sound discretion of the trial court, and its action will not be disturbed absent a clear showing of abuse. The decisions discussing imprisonment as a sanction for contempt indicate the court should utilize imprisonment only when no reasonable or effective alternatives are available.

(Footnotes and citations omitted.)

In *State v. Heiner*, 29 Wn. App. 193, 197, 627 P.2d 983 (1981), the court reviewed the three bases for contempt in Washington, stating:

> A court may use the civil contempt statute, RCW 7.20, as both a coercive and punitive remedy; but it may not use civil contempt solely as a punitive remedy. . . . The main thrust of the civil contempt statute is to coerce rather than to punish. Thus, any proceeding under the civil contempt statute must seek a coercive, remedial punishment to compel compliance. Consequently, imprisonment imposed under the civil contempt statute must also include a coercive remedy whereby the contemnor is imprisoned only until he or she complies with

the relevant court order. Therefore, the imposition of a fixed term of imprisonment pursuant to the civil contempt statute is improper where the contemnor is given no opportunity to purge the contempt through compliance.

(Citations omitted.)

■ Although the contempt order here is, in part, punitive, its primary purpose was to coerce the child into complying with the court's order of placement and, therefore, it was civil, not criminal, in nature. Intentional disobedience of a lawful order is contempt. *State v. Nelson,* 14 Wn. App. 658, 666, 545 P.2d 36 (1975). RCW 7.20.110 authorizes confinement of a contemnor until he or she performs an ordered act. The trial court had both personal and subject matter jurisdiction. Therefore, its placement order was lawful. It had the statutory[1] and inherent authority to punish the child for civil contempt for violating its placement order, at least until the child complied with the order.

■ The child argues that because runaways and other status offenders are not treated as delinquents under Washington statutes, the court cannot imprison her under its contempt powers. We reject this argument. Our legislature enacted statutes consistent with the decriminalization of the status offenders. *See* Becker, *Washington State's New Juvenile Code: An Introduction,* 14 Gonz. L. Rev. 289 (1979); Young, *Washington's Runaway Youth Act and*

---

[1]RCW 7.20.010 provides in pertinent part:

"The following acts or omissions, in respect to a court of justice or proceedings therein, are deemed to be contempts of court:

". . .

"(5) Disobedience of any lawful judgment, decree, order or process of the court."

RCW 7.20.020 provides:

"Every court of justice, and every judicial officer has power to punish contempt by fine or imprisonment, or both. But such fine shall not exceed three hundred dollars, nor the imprisonment six months; and when the contempt is not of those mentioned in RCW 7.20.010(1) and (2), it must appear that the right or remedy of a party to an action, suit or proceeding was defeated or prejudiced thereby, before the contempt can be punished otherwise than by a fine not exceeding one hundred dollars."

*Juvenile Court Procedure for Families in Conflict: A Brief Examination,* 14 Gonz. L. Rev. 439 (1979). There is no indication, however, that the legislature intended to restrict the statutory contempt power of juvenile court judges, nor would any attempt to restrict the statutory contempt power affect the court's inherent contempt power to enforce its orders. *Deskins v. Waldt,* 81 Wn.2d 1, 499 P.2d 206 (1972); *State v. Heiner, supra; In re Baker,* 71 Ill. 2d 480, 376 N.E.2d 1005 (1978). It should be noted that the contempt power is to be exercised with caution, and within narrow limits. Only under the most egregious circumstances should the juvenile court exercise its contempt power to incarcerate a status offender in a secure facility. If such action is necessary, the record should demonstrate that all less restrictive alternatives have failed. *See State ex rel. L.E.A. v. Hammergren,* 294 N.W.2d 705 (Minn. 1980). Caution preceded the court's contempt order in this case.

In further limitation of the court's exercise of its contempt authority, we note that a court cannot use the contempt power as a basis to punish a status offender who is otherwise not subject to juvenile court jurisdiction, nor attempt to find the child to be delinquent vis-a-vis the contempt finding. *See In re Baker, supra; In re Ronald S.,* 69 Cal. App. 3d 866, 138 Cal. Rptr. 387 (1977); *R.M.P. v. Jones,* 392 So. 2d 301 (Fla. Dist. Ct. App. 1980).

Affirmed.

DURHAM, A.C.J., and SWANSON, J., concur.

Reconsideration denied September 13, 1982.

Review denied by Supreme Court December 17, 1982.