[No. 16252-4-III.   Division Three.   January 12, 1999.]

THE STATE OF WASHINGTON, *on the Relation of Leland E. Shafer, Respondent*, v. CHRIS B. BLOOMER, *Appellant.*

*Louis D. Fessler,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Sidney S. Dolquist* and *Kevin E. Callaghan, Deputies,* for respondent.

SCHULTHEIS, C.J. — Chris Bloomer appeals the superior court's determination that he was in contempt for failure to make child support payments as ordered by the Office of Support Enforcement. He contends the trial court admitted that he was unable to comply with the child support order and thus abused its discretion when it found him in contempt. We vacate the order of dismissal and reverse and remand the order of contempt.

Mr. Bloomer is the father of a child born in February 1992. Sometime after the child's birth the State of Washington, through the Office of Support Enforcement, issued an administrative order requiring Mr. Bloomer to pay $427 per month as child support. Approximately four years later the State, through the Yakima County Prosecuting Attorney's Office, filed a petition for contempt alleging Mr. Bloomer had not made payments pursuant to the child support order.

A show cause hearing was conducted on June 13, 1996, by a Yakima County Superior Court Commissioner. An order was entered requiring Mr. Bloomer to appear at a review hearing approximately six weeks later. Additionally,

he was required to pay $200 toward his child support obligation prior to the review hearing *and* register with the Job Service Center of the Department of Employment Security. At the time of the next review hearing Mr. Bloomer had paid only $150. The court accepted the partial payment and allowed him additional time to pay the remaining amount. Another review hearing was set two months later in order to monitor Mr. Bloomer's compliance. However, he made no further child support payments.

Because Mr. Bloomer did not pay the money owed nor comply with the terms of the trial court's original order, the State requested a finding of contempt with the proposed sanction of jail time. Mr. Bloomer was assigned a court-appointed attorney to represent him at the contempt hearing.

Prior to the hearing, Mr. Bloomer filed a motion asking the State to declare, with particularity, the nature of the next proceeding and the sanctions sought. The trial court made a finding the contempt action was "remedial civil contempt." After a full hearing the court found Mr. Bloomer in contempt for nonpayment of child support but did not impose the jail sanction. He was ordered to pay $25 per week in child support, apply for three jobs per week and ordered to return to court in five weeks for another review hearing. Mr. Bloomer filed a timely appeal of this order.

During this appeal process, review hearings on Mr. Bloomer's contempt action continued to occur, which required Mr. Bloomer's participation. At the final hearing the trial court concluded Mr. Bloomer had complied with the terms of the court's order of contempt and dismissed the action. The State brought a motion on the merits seeking to dismiss the appeal as moot since the order of contempt was dismissed. The motion was granted. Mr. Bloomer filed a motion to modify, which was also granted.

Mr. Bloomer first contends that, pursuant to RAP 7.2(e), the trial court should not have entered the motion to dismiss the contempt action, which was by that time on appeal with this court. We agree.

■ RAP 7.2(e) applies to the authority of the trial court to modify a judgment or motion after an appellate court accepts review. The rule states in part: "If the trial court determination will change a decision then being reviewed by the appellate court, the permission of the appellate court must be obtained *prior to the formal entry* of the trial court decision." RAP 7.2(e) (emphasis added).

In order to determine whether the trial court complied with the requirements set forth in RAP 7.2(e), we must determine whether its dismissal of the contempt order was a determination that affected the outcome of a decision under review. We conclude it did. In a prior hearing in this matter, an appellate court commissioner dismissed Mr. Bloomer's appeal as moot based on the trial court's decision to dismiss the order of contempt. The State should have moved this court for permission to enter the trial court's dismissal prior to formal entry of the order to dismiss Mr. Bloomer's contempt action. As such, the order of dismissal is vacated.

Next, Mr. Bloomer maintains that while the trial court made a finding that the underlying action was a remedial contempt action, factually, it was a punitive contempt action that was not supported by the evidence. The trial court's finding is proper.

■■ A finding of contempt is reviewed under the abuse of discretion standard. *In re Marriage of James*, 79 Wn. App. 436, 440, 903 P.2d 470 (1995). A finding of contempt will be upheld on review if the appellate court finds the order is supported by a proper basis. *State v. Hobble*, 126 Wn.2d 283, 292, 892 P.2d 85 (1995) (citing *State v. Boatman*, 104 Wn.2d 44, 46, 700 P.2d 1152 (1985)).

At Mr. Bloomer's request, prior to the contempt hearing, the court made a finding that the State's lawsuit dealt with the issue of civil contempt and that any sanctions imposed would be remedial rather than punitive. A remedial sanction is one "imposed for the purpose of coercing performance when the contempt consists of the omission or refusal to perform an act that is yet in the person's power to perform." RCW 7.21.010(3).

■ In order to determine whether a contempt sanction is civil or criminal, courts look to the substance of the proceeding and the nature of the relief the proceeding will afford. Civil contempt is intended to "coerce compliance with a lawful court order . . . ." *In re Personal Restraint of King*, 110 Wn.2d 793, 799, 756 P.2d 1303 (1988).

Mr. Bloomer argues this contempt was punitive, thus criminal in nature. As such, he contends he was denied the constitutional due process such a charge warrants. We disagree. A civil contempt sanction is coercive and remedial and is usually for the benefit of another party. On the other hand, a criminal sanction is punitive and imposed to vindicate the authority of the court.

Here, the court made findings and conclusions regarding Mr. Bloomer's compliance with a lawful administrative order of child support. It found Mr. Bloomer had the skills and the ability to earn money. It found he had not made a diligent effort to comply with the support order. As such, he was properly found in contempt pursuant to RCW 7.21.010(1)(b).[1]

Regardless of whether the contempt action was remedial or punitive, Mr. Bloomer claims he did not receive adequate notice of the contempt action in violation of his rights of due process. We disagree.

■ Mr. Bloomer was entitled to notice of the time and place of the hearing and the nature of the contempt charge so he could adequately prepare a defense. He was properly served with copies of the State's petition for contempt as well as its motion and declaration for order to show cause regarding contempt. These documents required Mr. Bloomer to be in the Yakima County Superior Court at a time certain one month later. This gave him time to prepare an adequate defense. The pleadings informed Mr. Bloomer that the contempt action was filed to enforce a valid child

---

[1]This section defines contempt of court as the intentional "[d]isobedience of any lawful judgment, decree, order, or process of the court."

support order. He received the proper notice required by RCW 26.18.050.[2]

■ Mr. Bloomer also claims the number and frequency of the review hearings held pursuant to the order to show cause regarding contempt sentenced him to a "lifetime of probation" in violation of his due process rights. This is incorrect.

The trial court retains continuing jurisdiction under RCW 26.18 and "may use a contempt action to enforce a support or maintenance order until the obligor satisfies all duties of support, including arrearages, that accrued pursuant to the support or maintenance order." RCW 26.18.050(5). The trial court has the duty to enforce the terms of its contempt order, including periodic review hearings to check compliance.

Under these facts, it was only when Mr. Bloomer's case was under review that he made a child support payment, his first in over four years. The contempt order required Mr. Bloomer to pay $25 per week in child support and to

---

[2]RCW 26.18.050 provides:

"(1) If an obligor fails to comply with a support or spousal maintenance order, a petition or motion may be filed without notice under RCW 26.18.040 to initiate a contempt action as provided in chapter 7.21 RCW. If the court finds there is reasonable cause to believe the obligor has failed to comply with a support or spousal maintenance order, the court may issue an order to show cause requiring the obligor to appear at a certain time and place for a hearing, at which time the obligor may appear to show cause why the relief requested should not be granted. A copy of the petition or motion shall be served on the obligor along with the order to show cause.

"(2) Service of the order to show cause shall be by personal service, or in the manner provided in the civil rules of superior court or applicable statute.

"(3) If the order to show cause served upon the obligor included a warning that an arrest warrant could be issued for failure to appear, the court may issue a bench warrant for the arrest of the obligor if the obligor fails to appear on the return date provided in the order.

"(4) If the obligor contends at the hearing that he or she lacked the means to comply with the support or spousal maintenance order, the obligor shall establish that he or she exercised due diligence in seeking employment, in conserving assets, or otherwise in rendering himself or herself able to comply with the court's order.

"(5) As provided in RCW 26.18.040, the court retains continuing jurisdiction under this chapter and may use a contempt action to enforce a support or maintenance order until the obligor satisfies all duties of support, including arrearages, that accrued pursuant to the support or maintenance order."

actively seek permanent employment. It is not unreasonable to periodically review the contempt order, in court, as a method of coercing compliance by Mr. Bloomer, especially when his child's need for support is considered. When Mr. Bloomer is in full compliance with the order of contempt, it is reasonable to dismiss the action and the corresponding review hearings.

Finally, Mr. Bloomer argues his "remedial" order of contempt is defective and thus void because it does not contain a provision that allows Mr. Bloomer to purge the contempt finding and/or a jail sentence. We agree.

If the purpose of the contempt sanction is punitive, courts may order a determinate jail sentence, with no opportunity for the contemnor to purge himself of the contempt. If, however, the purpose of the sanction is to coerce compliance with a lawful court order, and the contemnor is incarcerated only as long as he or she fails to comply with that order, the contempt is civil, thus remedial. *King*, 110 Wn.2d at 800.

Here, we see elements of both criminal and civil contempt sanctions in Mr. Bloomer's contempt order. The court's findings speak of the civil nature of the hearings. No jail time was actually ordered but it was a viable option had Mr. Bloomer failed to comply with the terms of the accommodation order on file. This contempt action was brought by the State on behalf of Mr. Bloomer's minor child. These facts lend support to the civil nature of the action. However, the length of the potential jail term for noncompliance was not made part of the contempt order nor was there any mention of Mr. Bloomer's ability to purge either the finding of contempt or the threat of jail. This implies the proceeding was punitive in nature.

█ An order of remedial civil contempt must contain a purge clause under which a contemnor has the ability to avoid a finding of contempt and/or incarceration for noncompliance. We vacate the order of dismissal and reverse and remand the order of contempt to include a purge clause for the finding of contempt and any potential remedial sanctions.

254

Kurtz and Kato, JJ., concur.

After modification, further reconsideration denied February 25, 1999.