

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| GABRIELLE NGUYEN-ALUSKAR, an individual, ) | No. 73018-5-I |
| ) | |
| Appellant, ) | DIVISION ONE |
| ) | |
| v. ) | UNPUBLISHED OPINION |
| ) | |
| THE LASIK VISION INSTITUTE, LLC; ) GORDON JENSEN, M.D., a physician; ) and JOHN/JANE DOE PHYSICIANS 1-10, ) | |
| ) | |
| Respondents. ) | FILED: November 30, 2015 |
| ) | |

APPELWICK, J. — Nguyen-Aluskar sued LVI and Dr. Jensen alleging a lack of informed consent and medical negligence. Failure to produce expert testimony to support her claims brought motions for summary judgment. Nguyen-Aluskar requested a CR 56(f) continuance in order to afford her more time to obtain an expert witness declaration. The trial court denied Nguyen-Aluskar's request for a continuance, granted summary judgment in favor of LVI and Dr. Jensen, and denied reconsideration. We affirm.

## FACTS

The LASIK Vision Institute LLC (LVI) provides management services to independent physician contractors who perform laser-assisted in situ keratomileusis

(LASIK) eye surgeries and other vision enhancement procedures. LVI had a contract with Dr. Gordon Jensen to provide management services for his practice.

On February 5, 2005, Dr. Mark Nelson, an independent contractor affiliated with LVI, performed a photorefractive keratectomy (PRK) on Gabrielle Nguyen-Aluskar. A PRK is a laser refractive surgery performed to correct nearsightedness, farsightedness, and astigmatism. Prior to the procedure, Nguyen-Aluskar signed a six page consent form outlining the risks and possible side effects of the surgery. By signing the consent form, Nguyen-Aluskar acknowledged that, among other risks, was an increased risk of eye irritation and permanent over-corrective or under-corrective vision requiring the use of glasses or lenses for reading or distance vision. She also acknowledged that any vision improvements resulting from the procedure might revert back to the level of vision immediately prior to having the procedure. The consent form also noted that many patients have a condition causing a reduced ability to see or read up close.

The procedure was performed without complication. Nguyen-Aluskar was examined five days after the surgery and had 20/20 vision in both eyes.

In 2012, Nguyen-Aluskar underwent an enhancement procedure at LVI. Dr. Jensen performed the procedure. Once again, Nguyen-Aluskar signed a consent form. This time, the consent form—an enhancement consent form—was only one page, but stated, "General LASIK/PRK complications discussed in your original LASIK/PRK patient consent form apply to the enhancement procedure." It also listed several specific risks. Nguyen-Aluskar signed the consent form indicating that she read the form, agreed to its terms, re-read the original consent form, and that she wanted Dr. Jensen to perform a LASIK/PRK enhancement procedure on her. Dr. Jensen also signed the consent form

indicating that he discussed the consent form with Nguyen-Aluskar and gave her the opportunity to ask questions.

Dr. Jensen performed the enhancement procedure on January 27, 2012. The medical records indicate that the procedure was performed successfully and without complication. Roughly six weeks after the procedure, Nguyen-Aluskar's vision was 20/50 in her right eye and 20/40 in her left eye. Her vision had improved since her last visit after the procedure.

On January 17, 2013, Nguyen-Aluskar and Gokhan Aluskar, her husband at the time, sued LVI and Dr. Jensen claiming damages for injuries Nguyen-Aluskar suffered as a result of their negligence. The complaint alleged that the medical care provided by LVI and Dr. Jensen fell below the expected standard of medical care. And, it alleged that Dr. Jensen failed to properly diagnose, refer, and monitor Nguyen-Aluskar's eye condition, inform her of the risks associated with the treatment plan, and obtain her informed consent. The complaint also alleged that both LVI's and Dr. Jensen's acts and omissions constituted violations of the Consumer Protection Act (CPA), chapter 19.86 RCW. In their prayer for relief, Nguyen-Aluskar and her husband sought, among other things, economic and noneconomic damages, and damages for loss of consortium.

While the initial complaint did not specify what injuries Nguyen-Aluskar allegedly incurred as a result of the procedure, her responses to LVI's interrogatories clarified that Nguyen-Aluskar was experiencing decreased, impaired, and blurry vision, dry eyes, eye pain and discomfort, headaches, depression, and anxiety. Specifically, Nguyen-Aluskar stated that as a result of the enhancement procedure, her cornea was too thin, so she

3

could not undergo any other corrective procedures. She also stated that she requires the permanent use of reading glasses and that her vision has generally worsened.

On December 11, 2013, Nguyen-Aluskar and Gokhan Aluskar filed a motion for voluntary nonsuit requesting that the court dismiss their claims without prejudice pursuant to CR 41(a)(1)(B). The trial court granted the motion on December 23, 2013. Then, on February 21, 2014, Nguyen-Aluskar, individually, refiled her lawsuit against LVI and Dr. Jensen.

On May 30, 2014, LVI filed a motion for costs and statutory attorney fees for $4,075.42—the amount of costs and fees incurred defending against Nguyen-Aluskar's first lawsuit. On June 10, 2014, the trial court entered an order granting LVI's motion. It awarded LVI costs and statutory attorney fees pursuant to CR 41(d). LVI made several fruitless requests to Nguyen-Aluskar's counsel for $4,075.42.

On October 22, 2014, LVI filed a notice of hearing for December 12, 2014 on its anticipated motion for summary judgment. Nguyen-Aluskar's attorneys were listed on LVI's notice as a party requiring service of the notice. On November 14, 2014, LVI and Dr. Jensen separately filed and served motions for summary judgment dismissal of Nguyen-Aluskar's claims. LVI sought dismissal either through a CR 56 summary judgment dismissal or through a CR 41 involuntary dismissal for failure to comply with the court's June 10 order granting LVI costs and fees. Dr. Jensen sought only CR 56 summary judgment dismissal. Both defendants argued that summary judgment was proper, because Nguyen-Aluskar had no qualified expert opinions in support of her breach of standard of care and informed consent claims. And, they argued that she could not make the required evidentiary showing to support her CPA claims.

4

Nguyen-Aluskar filed a consolidated response to the summary judgment motions on December 1, 2014. The response was also a request for a CR 56(f) continuance and a motion for a trial continuance. In her response, she stated that she had consulted with and retained Dr. Richard Bensinger, a board certified ophthalmologist, to provide an opinion regarding the care she received. She stated that Dr. Bensinger examined her and reviewed her medical records in 2012, leading to the filing of the lawsuit. But, Nguyen-Aluskar claimed that while she was preparing her response to the motions for summary judgment, Dr. Bensinger informed her that he could no longer serve as a witness. Nguyen-Aluskar claimed that she was completely reliant upon Dr. Bensinger's opinion and had to seek a new expert witness to address the standard of care and informed consent issues. Consequently, she requested a continuance pursuant to CR 56(f) in order to find a new expert witness. Nguyen-Aluskar also responded to the motions for summary judgment by arguing that she presented sufficient evidence to support a CPA violation claim. And, she argued that LVI's request for dismissal pursuant to CR 41 should be denied, because she construed the trial court's June 10 order as a denial of LVI's request for costs.

On December 8, 2014, Dr. Jensen argued in reply that Nguyen-Aluskar failed to submit an affidavit in support of her CR 56(f) request for a continuance, and a declaration stating what discovery was contemplated, how it would raise an issue of material fact to preclude summary judgment, and why the discovery could not have been obtained prior to the summary judgment hearing. Consequently, on December 10, 2014, two days before the hearing on the motions for summary judgment, Nguyen-Aluskar filed a declaration and an affidavit. The declaration was an unsigned and unsworn declaration

5

of Nguyen-Aluskar. The affidavit was from Nguyen-Aluskar's counsel. On December 11, 2014, LVI and Dr. Jensen filed a joint motion to strike Nguyen-Aluskar's declarations as untimely and improper. And, Nguyen-Aluskar filed her declaration again, signed, but still unsworn.

The summary judgment hearing took place on December 12, 2014. After the hearing, the trial court made several rulings. First, it declined to rule on LVI's and Dr. Jensen's motion to strike the declarations. It instead treated the motions to strike as objections and sustained the objections. It then granted summary judgment on all of Nguyen-Aluskar's claims as to both LVI and Dr. Jensen. It denied Nguyen-Aluskar's CR 56(f) motion to continue, reasoning that dilatory conduct is not a basis for a continuance. And, while the trial court declined to enter findings as to LVI's CR 41 motion to dismiss—instead dismissing pursuant to CR 56—it reaffirmed its June 10 order awarding LVI fees and costs incurred defending against Nguyen-Aluskar's first lawsuit.

On December 22, 2014, Nguyen-Aluskar filed a motion for reconsideration of the trial court's summary judgment orders. The motion for reconsideration explained that since filing her response to the motions for summary judgment, Nguyen-Aluskar clarified an "unfortunate miscommunication" with Dr. Bensinger. She explained that because they resolved the miscommunication, Dr. Bensinger was willing to provide a declaration providing his expert medical opinions. Nguyen-Aluskar attached several exhibits to her motion for reconsideration. She attached Dr. Bensinger's declaration. In addition to attaching Dr. Bensinger's declaration, Nguyen-Aluskar also provided a list of additional medical experts that she contacted after Dr. Bensinger declined to serve as an expert witness. And, she also included a personal declaration dated December 20, 2014.

6

On January 5, 2015, the trial court denied Nguyen-Aluskar's motion for reconsideration. Nguyen-Aluskar appeals.

DISCUSSION

Nguyen-Aluskar argues that the trial court abused its discretion when it awarded LVI costs and statutory attorney fees under CR 41(d) that it incurred defending against her original lawsuit. She also contends that the trial court abused its discretion when it denied her request for a CR 56(f) continuance after Dr. Bensinger withdrew. She claims the trial court erred in granting summary judgment in favor of LVI and Dr. Jensen. Finally, she alleges that the trial court abused its discretion when it denied her motion for reconsideration of the trial court's order granting summary judgment.

I.   CR 41(d) Costs and Fees

Nguyen-Aluskar first argues that the trial court abused its discretion when it awarded LVI costs and fees in its June 10, 2014 order.

Nguyen-Aluskar moved for and was granted a voluntary nonsuit of her first lawsuit against LVI and Dr. Jensen pursuant to CR 41(a)(1)(B). Nguyen-Aluskar filed the current action, individually, against LVI on February 21, 2014. Like in her first action, she alleged that Dr. Jensen and LVI negligently performed the enhancement procedure, failed to obtain her informed consent, and violated the CPA by representing that she would have "falcon-like vision" after the procedure. She alleged the same damages as in the first complaint, but because her husband was no longer a party to the lawsuit, she did not allege damages for loss of consortium. She also removed loss of consortium from damages sought under her prayer for relief.

On May 30, 2014, LVI filed a motion for costs and fees pursuant to CR 41(d).[1] LVI argued that because the lawsuit Nguyen-Aluskar originally commenced was based upon almost the exact same allegations as those in her February 21, 2014 complaint, that it was entitled to costs incurred defending against the initial action. The trial court granted LVI's motion on June 10, 2014.

On appeal, Nguyen-Aluskar argues that the trial court abused its discretion when it awarded LVI fees under CR 41(d), because her claims in the second lawsuit were different than those in the first. She contends this is so, because Nguyen-Aluskar's husband at the time was removed from the action, the loss of consortium claim was removed, and the issues were narrowed.[2]

---

[1] CR 41(d) states, "If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of taxable costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order."

[2] LVI argues that Nguyen-Aluskar cannot challenge the trial court's June 10, 2014 order on appeal, because she failed to designate the issue in her notice of appeal. Nguyen-Aluskar's notice of appeal did not seek review of the June 10 order. But, an appellate court may exercise its discretion in considering a case on its merits despite a technical flaw in compliance with the rules of appellate procedure. See RAP 1.2(a); Hiner v. Bridgestone/Firestone, Inc., 138 Wn.2d 248, 263, 978 P.2d 505 (1999). Cases and issues should not be determined on the basis of compliance or noncompliance with the rules of appellate procedure except in compelling circumstances where justice demands it. RAP 1.2(a). The purpose of a notice of appeal is to notify the adverse party that an appeal is intended. In re Truancy of Perkins, 93 Wn. App. 590, 594, 969 P.2d 1101(1999), abrogated on other grounds by Bellevue School Dist. v. E.S., 148 Wn. App. 205, 199 P.3d 1010 (2009), reversed by 171 Wn.2d 695, 257 P.2d 570 (2011). If the appellant's brief sets forth assignments of error, arguments on the issues raised, and references to the legal authority, the opposing party is not unduly prejudiced by the court's decision to review an issue not raised in the notice of appeal. Id. Here, Nguyen-Aluskar assigned error to the trial court's June 10 order in her opening brief and she dedicated several pages of her opening brief to related arguments and legal authority. Therefore, our consideration of the issue does not unduly prejudice LVI.

The award of costs against a plaintiff who has once dismissed an action and then commences an action based upon the same claim is a matter within the trial court's discretion. CR 41(d) ("[T]he court may make such order for the payment of taxable costs of the action previously dismissed as it may deem proper."). Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion. In re Marriage of Freeman, 169 Wn.2d 664, 671, 239 P.3d 557 (2010).

Nguyen-Aluskar first argues that the case the trial court relied on to award LVI costs and fees—Johnson v. Horizon Fisheries, LLC, 148 Wn. App. 628, 201 P.3d 246 (2009)—is distinguishable. In Johnson, the trial court granted Horizon Fisheries a cost and statutory fee award under CR 41(d). Id. at 632. It did so, because Johnson moved to voluntarily dismiss his lawsuit when his attorney withdrew and then refiled the same action. Id. at 631-32. The Johnson court reasoned that because Johnson chose to prevent a trial when he took the voluntary dismissal, he should be responsible for the costs Horizon Fisheries reasonably incurred in anticipation of trial. Id. at 636.

Nguyen-Aluskar designated in the record Horizon Fisheries' motion for costs. She relies on it for the assertion that the Johnson court's reasoning for affirming the award was based on the fact that Johnson's nonsuit was related to his failure to prosecute due to methamphetamine use. Nguyen-Aluskar argues that the facts in Johnson are distinguishable from her case, because she diligently prosecuted her initial lawsuit. But, there is no indication that the Johnson court considered the reason behind Johnson's voluntary dismissal when deciding whether to award costs under CR 41(d). Id. at 633-36. Notably, the Johnson court did not include in its decision any of the facts Nguyen-

9

Aluskar discusses from Horizon Fisheries' motion. See id. The court awarded the costs based on the fact that Johnson filed the same lawsuit after the voluntary nonsuit. See id, at 632, 636.

Nguyen-Aluskar also argues that the award of costs and fees was an abuse of discretion, because her first action was different than her second action. The trial court found that Nguyen-Aluskar's complaint was not substantially different from her earlier complaint, as the second complaint alleged substantially similar claims. The only differences between Nguyen-Aluskar's first complaint and her second complaint is that she removed her then-husband as a party and removed the loss of consortium claim. Otherwise, her second action includes the same claims. The language of CR 41(d) is clear if the second action includes the same claim against the same defendant, the court may order costs for the action previously dismissed.

Nguyen-Aluskar further contends that because LVI did not insinuate that it would incur costs as a result of the voluntary nonsuit and did not object to the nonsuit that it is now—after the dismissal of her first lawsuit—estopped from seeking costs. Because Nguyen-Aluskar provides no authority for the assertion that LVI had to object or inform her that it intended to seek costs under CR 41(d) in the wake of her voluntary nonsuit, we do not address this argument. RAP 10.3(a)(6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 547 (1992) (stating that arguments not supported by authority will not be considered).

Finally, Nguyen-Aluskar argues that an award of costs to LVI results in a windfall, because LVI is using the same resources obtained in the previous action for the current action. In other words, she argues that LVI should be compensated for only those costs

10

incurred in the first lawsuit that were specific to the first lawsuit. But, once again, she provides no authority for this assertion. And, her assertion that LVI will not need to duplicate costs incurred defending against the first lawsuit in order to defend against the present lawsuit is purely speculative.

We conclude that the trial court did not abuse its discretion when it awarded LVI costs and statutory attorney fees[3] under CR 41(d).

## II. Motion for Continuance

Nguyen-Aluskar argues that the trial court abused its discretion when it denied her request for a CR 56(f) continuance, because she demonstrated good cause for the continuance.

CR 56(f) states:

> Should it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The court may deny a continuance under the rule if

> (1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact.

Turner v. Kohler, 54 Wn. App. 688, 693, 775 P.2d 474 (1989). Only one of the qualifying grounds is needed for a denial. Pelton v. Tri-State Mem'l Hosp., 66 Wn. App. 350, 356,

---

[3] While an award of attorney fees is improper under CR 41(d), it is within the trial court's discretion to award statutory attorney fees. See Hall v. Stolte, 24 Wn. App. 423, 426, 601 P.2d 967 (1979); Johnson, 148 Wn. App. at 635.

831 P.2d 1147 (1992). This court reviews denials of CR 56(f) motions for abuse of discretion. MRC Receivables Corp. v. Zion, 152 Wn. App. 625, 629, 218 P.3d 621 (2009).

Nguyen-Aluskar's consolidated response to LVI's and Dr. Jensen's motions for summary judgment stated that she had a good reason for the delay, because her expert witness withdrew on the eve of the due date of her opposition leaving her without an expert and without an opinion to present. She stated that her "subsequent expert witness's opinion" would address the standard of care and informed consent issues present in the lawsuit.

The trial court denied Nguyen-Aluskar's CR 56(f) motion to continue the summary judgment hearing, reasoning that dilatory conduct is not a basis for a continuance. The trial court noted that in the three and a half weeks since Nguyen-Aluskar's summary judgment response was due, she submitted nothing supporting the fact that she made any efforts to find another expert after Dr. Bensinger withdrew. And, the trial court also noted that Nguyen-Aluskar had failed to respond to interrogatories five months earlier, when those interrogatories specifically asked her to identify her experts.[4] The trial court ultimately concluded that to grant the continuance would support Nguyen-Aluskar's dilatory conduct.

---

[4] Nguyen-Aluskar responded to LVI's interrogatories and requests for production in June 2013—for the first lawsuit. In response to LVI's interrogatory asking for the name of each expert witness Nguyen-Aluskar expected to call at trial, Nguyen-Aluskar stated that expert witnesses had not yet been determined. She stated that Dr. Bensinger "may serve" as Nguyen-Aluskar's medical expert. But, the first lawsuit was dismissed. LVI again served interrogatories and requests for production on Nguyen-Aluskar on August 29, 2014—for the second lawsuit. Nguyen-Aluskar did not respond to LVI's August 29 discovery request. Not until November 24, 2014 in her possible primary witness disclosure did Nguyen-Aluskar identify Dr. Bensinger as a medical expert witness in the second lawsuit.

Nguyen-Aluskar relies on Coggle v. Snow, 56 Wn. App. 499, 507, 784 P.2d 554 (1990), for the assertion that when a party knows of the existence of a material witness and shows good reason why the witness's affidavit cannot be obtained in time for the summary judgment proceeding, the court has a duty to give the party a reasonable opportunity to complete the record before ruling on the case. In Coggle, the court concluded that the trial court abused its discretion by denying Coggle's motion for a continuance when he was unable to produce an expert declaration in time for a summary judgment hearing, because he had just hired a new attorney. Id. at 508.

In Coggle, the new attorney appeared for the plaintiff and filed a motion for continuance along with a declaration. Id. at 502. The new attorney's declaration stated that his client had already been seen by a physician, described what evidence the affidavit of the physician would rebut, and explained that it was too late to obtain the physician's affidavit within the time required by LR 56 because of his late substitution into the case. Id.

Unlike in Coggle, Nguyen-Aluskar did not initially attach supporting declarations to her CR 56(f) motion to continue containing reasons why she could not yet present facts essential to justify her opposition. And, after she filed untimely declarations, two days before the summary judgment hearing, LVI and Dr. Jensen moved to strike the declarations.[5] The trial court sustained their objections to the declarations. Even considering the untimely declarations, the substance of the attorney's declaration in Coggle makes that case distinguishable. The attorney in Coggle was diligent and made

---

[5] CR 56(c) requires an adverse party to file and serve opposing affidavits no later than 11 calendar days before the summary judgment hearing.

13

it clear that the plaintiff was nearly ready to submit the physician's affidavit and would have been able to, but for the shortened timeline resulting from the substitution of counsel. Id. at 502. This is distinguishable from the case here, in which Nguyen-Aluskar was effectively asking the court for time to conduct an entirely new expert search.

Here, Nguyen-Aluskar consulted with Dr. Bensinger in November 2012. Nothing in the record affirms further contact for nearly two years, until after the summary judgment motion had been filed. Had Nguyen-Aluskar not been dilatory in responding to discovery, she would have much earlier had reason to follow up with Dr. Bensinger to confirm his availability and his opinion.[6] Nguyen-Aluskar had notice on October 22, 2014 that LVI noted the motion seeking dismissal on summary judgment. And, Nguyen-Aluskar had additional notice when LVI and Dr. Jensen filed their motions for summary judgment on November 14, 2014. But, Nguyen-Aluskar waited until November 21, 2014 to contact Dr. Bensinger. Nguyen-Aluskar set up a meeting with Dr. Bensinger on November 26, 2014 to "finalize [his] declaration." And, Nguyen-Aluskar learned of Dr. Bensinger's withdrawal on November 26, 2014. Nguyen-Aluskar does not provide a good reason for her delay— about a month—once she received notice that LVI was seeking dismissal.

We conclude that the trial court did not abuse its discretion when it denied Nguyen-Aluskar's CR 56(f) motion for a continuance.[7]

---

[6] LVI points out that there were other events in the litigation that should have prompted communication between Nguyen-Aluskar and Dr. Bensinger prior to her response to the motions for summary judgment. Specifically, that Nguyen-Aluskar should have confirmed the existence of supportive expert testimony when LVI served her with its first interrogatories and requests for production several months prior to the summary judgment hearing—on August 29, 2014. Failure to identify an expert invited the summary judgment motions.

[7] Because only one qualifying ground is needed for the trial court to properly deny a motion for continuance, we need not address whether Nguyen-Aluskar sufficiently

III.    Motion for Reconsideration

Nguyen-Aluskar argues that the trial court abused its discretion when it denied her motion for reconsideration of the trial court's order granting summary judgment.[8]

A. Standard of Review

CR 59 governs motions for reconsideration. We review a trial court's denial of a motion for reconsideration and its decision to consider new or additional evidence presented with the motion to determine if the trial court's decision is manifestly unreasonable or based on untenable grounds. Martini v. Post, 178 Wn. App. 153, 161, 313 P.3d 473 (2013).

Reversal of the trial court's order denying a motion for reconsideration of an order granting summary judgment is appropriate when new or additional evidence creates a genuine issue of material fact. Id. at 157. The trial court's denial of a motion for reconsideration may be manifestly unreasonable if the evidence, when viewed in the light

---

stated what evidence would be established through the additional discovery or whether the desired evidence would raise a genuine issue of material fact. See Pelton, 66 Wn. App. at 356. But, we note that unlike in Coggle, Nguyen-Aluskar did not maintain that she had already found a specific expert who would provide a declaration. Rather, she stated only that she generally planned to find another expert if allotted more time.

[8] Although Nguyen-Aluskar designates the trial court's orders granting summary judgment in her notice of appeal, she appears to concede that summary judgment was properly granted on the record before the trial court at the time it made its original summary judgment rulings. All of her arguments focus on the propriety of summary judgment based on Dr. Bensinger's declaration and her December 20, 2014 personal declaration. She did not submit either declaration until after the court granted LVI's and Dr. Jensen's summary judgment motions. While declarations were attached to Nguyen-Aluskar's response to the motions for summary judgment (her declaration and her attorney's declaration), the trial court sustained LVI's and Dr. Jensen's objections to those declarations and properly excluded them. Therefore, we focus on the trial court's ruling on Nguyen-Aluskar's motion for reconsideration—and the evidence available at that point in time—instead of what was available when the trial court made its original rulings on the motions for summary judgment.

most favorable to the nonmoving party, creates a genuine issue of material fact as to the nonmoving party's claims. Id. at 164. A material fact is one upon which the outcome of the ligation depends, in whole or in part. Coggle, 56 Wn. App. at 509.

B. Only Informed Consent Claim Considered on Appeal

Nguyen-Aluskar argues that Dr. Bensinger's declaration creates a genuine issue of material fact that precludes summary judgment as to her informed consent claim. She also argues that her personal declaration provides the necessary support for her additional claims (CPA; extreme and outrageous conduct; fraud and misrepresentation; negligent training, management and supervision; and failure to warn).

LVI challenges the adequacy of Dr. Bensinger's declaration as to all of Nguyen-Aluskar's claims. Dr. Jensen argues only that Dr. Bensinger's declaration is insufficient to maintain Nguyen-Aluskar's informed consent claim. He does so, because he argues that Nguyen-Aluskar waived her right to appeal the dismissal of her claims for CPA violations and medical negligence. Specifically, Dr. Jensen notes that Nguyen-Aluskar's opening brief did not address or assign error to the trial court's dismissal of her CPA claim or the dismissal of her medical negligence claim. He also notes that Dr. Bensinger's declaration focuses only on the informed consent claim.

This court does not consider arguments raised for the first time in a reply brief. Nakatani v. State, 109 Wn. App. 622, 625 n.1, 36 P.3d 1116 (2001). Nguyen-Aluskar's opening brief quite clearly addresses whether Dr. Bensinger's declaration creates a genuine issue of material fact as to her informed consent claim. It also quite clearly does not provide any argument as to Nguyen-Aluskar's CPA claim. Nor does Nguyen-

Aluskar's opening brief address her general medical negligence claim. Therefore, we consider only Nguyen-Aluskar's informed consent claim.

C. Evidence Before the Trial Court

As a preliminary matter, the parties dispute what evidence the trial court actually considered when it ruled on Nguyen-Aluskar's motion for reconsideration.

Nguyen-Aluskar argues that the trial court abused its discretion when it denied her motion for reconsideration, because Dr. Bensinger's declaration constituted newly discovered evidence pursuant to CR 59(a)(4)[9] establishing a ground for reconsideration. But, the trial court's order denying Nguyen-Aluskar's motion for reconsideration stated that in making its decision, it reviewed Nguyen-Aluskar's motion for reconsideration, her attorney's declaration and the exhibits attached thereto. The exhibits included, among other things, Dr. Bensinger's declaration and Nguyen-Aluskar's personal declaration signed on December 20, 2014. The court's order gives no indication that it rejected any of the proffered evidence on reconsideration as untimely or inadmissible.

LVI and Dr. Jensen argue that the declarations submitted for the first time with Nguyen-Aluskar's motion for reconsideration were submitted too late to be considered by the trial court and that we should not consider them. The decision to consider new or

_____

[9] Nguyen-Alusukar first argues that the trial court abused its discretion when it denied her motion for reconsideration, because Dr. Bensinger's withdrawal constituted surprise under CR 59(a)(3). Under CR 59(a)(3), a motion for reconsideration may be granted if a party's rights were materially affected by surprise which ordinary prudence could not have guarded against. Nguyen-Aluskar argued that she was entitled to a continuance, because Dr. Bensinger withdrew at the last minute. In other words, she argued that Dr. Bensinger's withdrawal was a complete surprise. But, the trial court concluded that learning of Dr. Bensinger's withdrawal so late was as a result of Nguyen-Aluskar's dilatory conduct. The same facts and reasons that supported denial of the continuance affirm that it was not an abuse of discretion to deny reconsideration on this basis.

additional evidence presented with a motion for reconsideration is squarely within the trial court's discretion. Id. at 162. In the context of summary judgment, unlike in a trial, there is no prejudice if the court considers additional facts on reconsideration. Id. Generally, nothing in CR 59 prohibits the submission of new or additional materials on reconsideration. Id. Therefore, the trial court's decision to consider the two new declarations submitted on reconsideration was not manifestly unreasonable.

We will review the trial court's decision assuming it considered the declarations.

D. No Issue of Material Fact as to Informed Consent

RCW 7.70.050 sets out the standard for informed consent. A plaintiff alleging negligence on the basis of failure to obtain informed consent has the burden of establishing (a) that the health care provider failed to inform the patient of a material fact or facts relating to the treatment, (b) that the patient consented to the treatment without being aware of or fully informed of such material fact or facts, (c) that a reasonably prudent patient under similar circumstances would not have consented to the treatment if informed of such material fact or facts, and (d) that the treatment in question proximately caused injury to the patient. RCW 7.70.050.

A signed consent form that sets out specific criteria is prima facie evidence that the patient gave his or her informed consent to the treatment administered.[10] RCW

---

[10] The consent form must set forth (1) the nature and character of the proposed treatment, (2) the anticipated results of the proposed treatment, (3) the recognized possible alternative forms of treatment, and (4) the recognized serious possible risks, complications, and anticipated benefits involved in the treatment and in the recognized possible alternative forms of treatment, including nontreatment. RCW 7.70.060(1)(a). Nguyen-Aluskar does not allege that the substance of the forms was statutorily deficient.

7.70.060. A plaintiff has the burden of rebutting this prima facie evidence of informed consent by a preponderance of the evidence. RCW 7.70.060.

Here, Nguyen-Aluskar does not dispute that she signed both the one page enhancement consent form and the original consent form. And, by signing the one page consent form, Nguyen-Aluskar agreed that she had been provided a copy of the original six page form and re-read the form. The one page consent form warned that there could be "complications" and specifically listed loss of vision, vision which cannot be completely corrected with glasses or contact lenses, infection, and inflammation. The original six page form specifically indicated that requiring reading glasses is a risk of the procedure. And both forms emphasized that there are nonsurgical alternatives to the procedure.

To rebut her signature on the informed consent forms, Nguyen-Aluskar relied on a general denial in her declaration that she was not sufficiently informed about all of the risks of the procedure. A general denial is not sufficient to create a material issue of fact. See CR 56(e); Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co., 122 Wn. App. 736, 744, 87 P.3d 774 (2004). Thus, Nguyen-Aluskar must rely on only Dr. Bensinger's declaration—based in part on her hearsay statements—to create a material question of fact about informed consent.

Evidence submitted in opposition to summary judgment must be admissible. SentinelC3, Inc. v. Hunt, 181 Wn.2d 127, 141, 331 P.3d 40 (2014). A declaration in support of or in opposition to summary judgment must satisfy the standard of CR 56(e). Doe v. Puget Sound Blood Ctr., 117 Wn.2d 772, 787, 819 P.2d 370 (1991). The declaration, like an affidavit, must be made on personal knowledge, set forth admissible evidentiary facts, and affirmatively show that the declarant is competent to testify to the

19

matters stated. McKee v. Am. Home Prods., Corp., 113 Wn.2d 701, 706, 782 P.2d 1045 (1989).

An expert witness may base his or her opinion upon hearsay. Deep Water Brewing, LLC v. Fairway Resources Ltd., 152 Wn. App. 229, 275, 215 P.3d 990 (2009). And, the trial court may allow the admission of otherwise hearsay evidence and inadmissible facts for the purpose of showing the basis of the expert's opinion, but the admission of these facts is not substantive proof of them. Allen v. Asbestos Corp., 138 Wn. App. 564, 579-80, 157 P.3d 406 (2007).

In Allen, the plaintiff sued a company alleging that his lung cancer was caused by asbestos dust from a product the company manufactured that his father brought home from work on his clothes. Id. at 569. The Allen court concluded that the trial court properly struck portions of a doctor's declaration that included statements concluding that the plaintiff was exposed to asbestos. Id. at 580-81. The court opined that the doctor was qualified to testify about only the medical effect that asbestos had on the plaintiff, assuming the plaintiff was actually exposed to asbestos. Id. It reasoned that the expert's opinion about factual matters outside his industrial hygiene and epidemiology expertise— whether the company's products were present or used at the father's workplace—were properly excluded as substantive evidence. Id. at 581.

Here, the relevant statements in Dr. Bensinger's declaration amount to the following: (1) Nguyen-Aluskar met briefly with Dr. Jensen, but did not discuss any substantive issues, the risks, or go over informed consent, (2) The enhancement consent form was only one page whereas the original consent form was six pages, and (3) Nguyen-Aluskar was unable to read the form because of the administration of eye drops

so the technician showed her where to sign. Based on that information, Dr. Bensinger concluded that it would not have been prudent or reasonable for a doctor to rely on the one page consent form, because too much time had passed and because a full disclosure should have been used. And, he concluded that Nguyen-Aluskar "should have been informed that she should require reading glasses" after the procedure. He also stated that a "reasonably prudent physician" would have discouraged Nguyen-Aluskar from undergoing a second procedure based upon the potential risks and side effects. He opined that a reasonably prudent physician would have performed the surgery only if the patient had consented after having been well informed of the risks and then only if the patient had insisted. Dr. Bensinger's declaration states that he drew his opinions based on his personal knowledge, training, and experience as a physician, his review of Nguyen-Aluskar's medical records, and his interview and examination of Nguyen-Aluskar.

As illustrated in Allen, whether an LVI technician put drops in her eyes prior to her signing the consent form so she could not read, whether she discussed any substantive issues or informed consent with Dr. Jensen, and whether LVI recommended that she undergo the procedure are factual matters for which Dr. Bensinger has no personal knowledge. And, they are not matters of ophthalmological expertise. In the context of Dr. Bensinger's declaration they are simply hearsay statements. Those statements cannot be considered as substantive evidence and do not create a genuine issue of material fact merely by virtue of being included in his declaration. See Allen, 138 Wn. App. at 579-80.

Significantly, Nguyen-Aluskar did not include those key foundational facts relied upon by Dr. Bensinger in her declaration. The facts simply were not in evidence. Without

them, Dr. Bensinger's declaration lacks the factual foundation necessary to support its ultimate conclusions. And, Dr. Bensinger's declaration effectively concedes that had the original six page form been used on the day of the enhancement procedure instead of the truncated one page form, that Nguyen-Aluskar would have received adequate informed consent. Nguyen-Aluskar's signature on both forms constitutes prima facie evidence of informed consent. Nguyen-Aluskar has not raised a material issue of fact to rebut that presumption.

Because Nguyen-Aluskar fails to demonstrate the existence of any genuine issues of material fact pertaining to her informed consent claim, the trial court did not abuse its discretion when it denied Nguyen-Aluskar's motion for reconsideration.

We affirm.

WE CONCUR: